IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| GABRIEL FUENTES JR. CONSTRUCTION CO., INC.,<br><br>Plaintiff,<br><br>v.<br><br>CARTER CONCRETE STRUCTURES, INC.<br>LIBERTY MUTUAL INSURANCE CO.<br><br>Defendants. | Civil No. 14-1473(DRD) |

## OPINION AND ORDER

### I.   RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

The instant case is an action for breach of a contract between Gabriel Fuentes Jr. Construction Co., Inc., (hereinafter "Plaintiff" or "GFC") and Carter Concrete Structures, Inc. (hereinafter "Defendant" or "CCS").  The dispute arose out of work performed by GFC, a subcontractor, for CCS, the primary contractor, on a parking structure for a hospital administered by the Department of Veterans Affairs (hereinafter "Project").

On December 12, 2012, Plaintiff and Defendant entered into a Subcontract Agreement pursuant to which Plaintiff was to install Auger Cast Piles as part of the Project. Docket No. 1 at 3.   According to the contract between the two parties,

Plaintiff's work was originally to be completed in seven weeks. Id.

On May 23, 2014, Plaintiff GFC was able to complete the work contracted for with Defendant. Id. at 18.   At the time the suit was filed, Plaintiff sought compensation for payments amounting to $1,261,554.14.   Id.

Plaintiff filed the instant action (Docket No. 1) under diversity of jurisdiction on June 16, 2014.   Therein, they alleged that Defendant was liable for breach of contract, negligence, delay in fulfilling contractual obligations, and bad faith in their contractual dealings. See Id.   Included as a defendant was Liberty Mutual Insurance, Co., Defendants surety under the Miller Act (hereinafter "The Act"), 40 U.S.C.A. § 3133.

In response to Plaintiff's complaint, Defendant filed a *Motion to Dismiss*, a *Motion to Stay Proceedings*, and a *Motion to Strike counts III, IV, V, and VII* of Plaintiff's complaint. Docket No. 12.   Therein, Defendant claims Plaintiff failed to abide by two conditions for filing suit under the Miller Act. Specifically, Defendant claims Plaintiff had not performed "the last of [its] labor" as mandated by the Act and the action had not been brought "in the name of the United States." *See* Docket No. 12 at 6-7.   Furthermore, Defendant moved for a stay in the

proceedings based on a provision in their contract with Plaintiff. Id.

For the reasons elucidated below, the Court hereby **denies** Defendant's Motion to Dismiss, **grants** Defendant's Motion to Stay Proceedings, and **denies** Defendant's Motion to Strike Counts III, IV, and V. We explain.

## II. STANDARD OF REVIEW FOR MOTIONS TO DISMISS

Federal Rule of Civil Procedure 8(a) requires plaintiffs to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under Bell Atlantic v. Twombly, 550 U.S. 544, 555 (2007), a plaintiff must "provide the grounds of his entitlement [with] more than labels and conclusions." *See* Ocasio-Hernandez v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011) ("in order to 'show' an entitlement to relief a complaint must contain enough factual material 'to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact).')(quoting Twombly, 550 U.S. at 555) (citation omitted). Thus, a plaintiff must, and is now required to, present allegations that "nudge [his] claims across the line from conceivable to plausible" in order to comply with the requirements of Rule 8(a). Id. at 570; *see e.g.* Ashcroft v. Iqbal, 556 U.S. 662 (2009).

When considering a motion to dismiss, the Court's inquiry occurs in a two-step process under the current context-based "plausibility" standard established by Twombly, 550 U.S. 544, and Iqbal, 556 U.S. 662. "Context based" means that a Plaintiff must allege sufficient facts that comply with the basic elements of the cause of action. *See* Iqbal, 556 U.S. at 677-679 (concluding that plaintiff's complaint was factually insufficient to substantiate the required elements of a *Bivens* claim, leaving the complaint with only conclusory statements). First, the Court must "accept as true all of the allegations contained in a complaint[,]" discarding legal conclusions, conclusory statements and factually threadbare recitals of the elements of a cause of action. Iqbal, 556 U.S. at 678. "Yet we need not accept as true legal conclusions from the complaint or 'naked assertion[s]' devoid of 'further factual enhancement.'" Maldonado v. Fontanes, 568 F.3d 263, 268 (1st Cir. 2009) (quoting Iqbal, 556 U.S. 678) (quoting Twombly, 550 U.S. at 557).

Under the second step of the inquiry, the Court must determine whether, based upon all assertions that were not discarded under the first step of the inquiry, the complaint "states a plausible claim for relief." Iqbal, 556 U.S. 679. This second step is "context-specific" and requires that the Court draw from its own "judicial experience and common sense"

to decide whether a plaintiff has stated a claim upon which relief may be granted, or, conversely, whether dismissal under Rule 12(b)(6) is appropriate.  Id.

Thus, "[i]n order to survive a motion to dismiss, [a] plaintiff must allege sufficient facts to show that he has a plausible entitlement to relief." Sanchez v. Pereira-Castillo, 590 F.3d 31, 41 (1st Cir. 2009).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]' 'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Furthermore, such inferences must be at least as plausible as any "obvious alternative explanation." Id. at 679-80 (citing Twombly, 550 U.S. at 567).  "A plaintiff is not entitled to 'proceed perforce' by virtue of allegations that merely parrot the elements of the cause of action." Ocasio-Hernandez, 640 F.3d at 12, (citing Iqbal, 556 U.S. 679).

The First Circuit has cautioned against equating plausibility with an analysis of the likely success on the merits, affirming that the plausibility standard assumes "pleaded facts to be true and read in a plaintiff's favor" "even if seemingly incredible." Sepúlveda-Villarini v. Dep't of Educ. of P.R., 628 F.3d 25, 30 (1st Cir. 2010) (citing Twombly, 550 U.S. at 556); Ocasio-Hernandez, 640 F.3d at 12 (citing Iqbal,

556 U.S. 679); *see* Twombly, 550 U.S. at 556 ("[A] well-pleaded complaint may proceed even if it appears that a recovery is very remote and unlikely.")(internal quotation marks omitted); *see* Ocasio-Hernandez, 640 F.3d at 12 (citing Twombly, 550 U.S. at 556)("[T]he court may not disregard properly pled factual allegations, 'even if it strikes a savvy judge that actual proof of those facts is improbable.'"). Instead, the First Circuit has emphasized that "[t]he make-or-break standard . . . is that the combined allegations, taken as true, must state a plausible, [but] not a merely conceivable, case for relief." Sepúlveda-Villarini, 628 F.3d at 29.

However, a complaint that rests on "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like" will likely not survive a motion to dismiss. Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996). Similarly, unadorned factual assertions as to the elements of the cause of action are inadequate as well. Penalbert-Rosa v. Fortuno-Burset, 631 F.3d 592 (1st Cir. 2011). "Specific information, even if not in the form of admissible evidence, would likely be enough at [the motion to dismiss] stage; pure speculation is not." Id. at 596; *see* Iqbal, 556 U.S. at 681("To be clear, we do not reject [] bald allegations on the ground that they are unrealistic or nonsensical. . . . It is the conclusory nature of [the] allegations, rather than their extravagantly fanciful nature,

that disentitles them to the presumption of truth."); *see* <u>Mendez Internet Mgmt. Servs. v. Banco Santander de P.R.</u>, 621 F.3d 10, 14 (1st Cir. 2010) (The <u>Twombly</u> and <u>Iqbal</u> standards require District Courts to "screen[] out rhetoric masquerading as litigation."). However, merely parroting the elements of a cause of action is insufficient. <u>Ocasio-Hernandez</u>, 640 F.3d at 12 (citing <u>Sanchez v. Pereira-Castillo</u>, 590 F.3d 31, 49 (1st Cir. 2009)).

The First Circuit recently outlined two considerations for district courts to note when analyzing a motion to dismiss. <u>García-Catalán v. United States</u>, 734 F.3d 100, 104 (1st Cir. 2013). First, a complaint modeled on Form 11 of the Appendix of the Federal Rules of Civil Procedure which contains sufficient facts to make the claim plausible is ordinarily enough to surpass the standard prescribed under <u>Twombly-Iqbal</u>. <u>Id.</u> at 104. However, counsel are forewarned that merely copying a federal form which or may not be identical to a form that complies with a state cause of action being tried in federal court based on diversity jurisdiction may not necessarily be sufficient. Second, district courts should accord "some latitude" in cases where "[a] material part of the information needed is likely to be within the defendant's control." <u>Id.</u> (more latitude is appropriate in cases where "it cannot reasonably be expected that the [plaintiff], without the benefit of discovery, would

7

have any information about" the event that gave rise to the alleged injury.)(internal citations and quotations omitted).

### III. LEGAL ANALYSIS[1]

### i.   Miller Act Claims

The Miller Act, 40 U.S.C. § 3133, provides a federal cause of action for those supplying labor or materials upon a payment bond secured by the principal contractor of a federal government project.   The Act authorizes a supplier who has a "direct contractual relationship with a subcontractor but no contractual relationship ... with the contractor furnishing" the bond to sue on the bond for "the balance ... unpaid at the time of institution" of the suit and to recover "judgment for the sum or sums justly due him." 40 U.S.C. § 270b.   It follows that the Miller Act is highly remedial in nature and is therefore entitled to a liberal construction and application in order to fulfill Congressional intent of protecting those whose labor and materials go into public projects.   *See* U.S. for Benefit & on Behalf of Sherman v. Carter, 353 U.S. 210, 216 (1957).

Congressional intent and judicial interpretation unanimously favor the notion that Federal Miller Act claims were not meant to replace subcontractors' state law contract remedies.   Consol. Elec. & Mechanicals, Inc. v. Biggs Gen.

---

[1] Finding that Plaintiff's causes of action are not redundant as they each stand rest on distinct facts, the Court summarily **denies** Defendants Motion to Strike Plaintiff's Third, Fourth, Fifth and Seventh Causes of Action.

Contracting, Inc., 167 F.3d 432, 436 (8th Cir. 1999). Furthermore, although state courts are typically the ones to adjudicate contract disputes, district courts are vested with the power to adjudicate state law claims under diversity jurisdiction. *See* McDaniel v. University of Chicago, 548 F.2d 689, 695 (7th Cir.1977)("an action for breach of an employment contract is traditionally a state court action"); *see also* Erie R. Co. v. Tompkins, 304 U.S. 64 (1938)("Except in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state."). Thus, a Miller Act suit is not a subcontractor's exclusive judicial remedy for breach of contract. *See* United States [use of] Sunworks Div. of Sun Collector Corp. v. Insurance Co. of North America, 695 F.2d 455 (10th Cir.1982) (allowing subcontractor to sue bonded general contractor for quantum meriut recovery); United States [use of] Mobile Premix Concrete, Inc. v. Santa Fe Engineers, Inc., 515 F.Supp. 512 (D.Colo.1981) (holding that subcontractor could recover damages from general contractor for delay in performance under state law).

### ii.  Defendant CCS' Motion to Dismiss

The Miller Act establishes a one-year statute of limitations for the commencement of the action. 40 U.S.C. § 3133(b)(2). The one year period in which to bring suit under the Miller Act begins to run 90 days after the last day on which

9

labor or materials were supplied and ends one year after that date.  Id.   Defendant's Motion is based on the position that Plaintiff has not performed the "last of [its] labor" and, thus, may not file claims under the Miller Act.  Docket No. 12 at 6.

CCS argues that "Fuentes' work is far from accepted as [CCS] continues to discover remedial work for Fuentes due to defects in its performance."  Id.   Fuentes counters that they completed the work on May 23, 2014.  See Docket No. 26, p. 12. The majority of Circuit Courts have found that corrections and repairs after contract terms between a subcontractor and a primary contractor have been fulfilled do not affect the running of the term.  See U. S. for Use & Benefit of Austin v. W. Elec. Co., 337 F.2d 568, 572 (9th Cir. 1964); see also United States v. Int'l Fid. Ins. Co., 200 F.3d 456, 460 (6th Cir. 2000) (quoting United States for the use of Billows Elec. Supply Co. v. E.J.T. Constr. Co., Inc., 517 F.Supp. 1178, 1181 (E.D.Pa.1981), aff'd. 688 F.2d 827 (3rd Cir.); United States for the use of Magna Masonry, Inc., v. R.T. Woodfield, Inc., 709 F.2d 249, 250 (4th Cir.1983); United States ex rel. Austin v. Western Elec. Co., 337 F.2d 568, 572 (9th Cir. 1964); United States for the use of State Elec. Supply Co. v. Hesselden Constr. Co., 404 F.2d 774, 776 (10th Cir.1968)).  Therefore, the crucial issue in the instant case is whether or not Plaintiff's work has been accepted by Defendant.

Here, the Parties are at odds regarding the issue of contractual completion. The majority rule provides that the trier of fact must distinguish "whether the work was performed ... as a 'part of the original contract' or for the 'purpose of correcting defects, or making repairs following inspection of the project.'" Austin, 337 F.2d at 572–73 (quoting United States ex rel. Gen. Elec. Co. v. Gunnar I. Johnson & Son, Inc., 310 F.2d 899, 903 (8th Cir.1962)). On one hand, Defendants assure the Court they have found remedial tasks for Plaintiff to complete and, thus, the contract has not been fulfilled. *See* Docket No. 12 at 6. On the other hand, Plaintiff avers that Defendant has in fact accepted its work, as Defendant has "continued to work over the foundation built by [Fuentes]." Docket No. 22 at 14.

If the Court were to grant this motion to dismiss, it would essentially be taking Defendant's word that the contract has not been fulfilled because Defendant continues to find remedial work for Plaintiff to complete over Plaintiff's assertion that Defendant has accepted its work. Nevertheless, at this stage, district courts are to take the facts alleged by the non-moving party, Gabriel Fuentes Jr. Construction Co., Inc., as true. Hence the Court must conclude, from the facts set forth in the complaint, that the work performed by Plaintiff was accepted. Accordingly, finding that Plaintiffs have pled sufficient facts

to make relief plausible, the Court hereby **denies** Defendant CCS'
*Motion to Dismiss* (Docket No. 12).

Defendant CCS also move for dismissal under the theory that
an action under the Miller Act must be brought "in the name of
the United States for the use of the person bringing the
action," and Plaintiff has failed to do so.  Docket No. 12 at 7.
However, we are unpersuaded as failure to bring the action in
the name of the United States is a technical defect that is not
jurisdictional and can be cured by amending the complaint. *See*
U.S. for Use & Benefit of Canion v. Randall & Blake, 817 F.2d
1188, 1191 (5th Cir. 1987).  Accordingly, Defendant's *Motion to
Dismiss* for failing to file suit in the name of the United
States is hereby **denied** and Plaintiffs *Motion to File an Amended
Complaint* (Docket No. 22, Exhibit A) is hereby **granted**.
Notwithstanding, all pleadings are to be filed in the name of
the United States for the benefit of Plaintiff Gabriel Fuentes
Construction Co., Inc.

### iii. Motion to Stay Further Proceedings

After denying Defendant's motion to dismiss, the Court must
now turn its attention to its *Motion to Stay Further Proceedings*
(Docket No. 12).  This power to stay a proceeding before it is
part of every court's vested right to manage the disposition of
the causes on its docket with economy of time and effort for
itself, for counsel, and for litigants.  Landis v. N. Am. Co.,

299 U.S. 248, 254-55 (1936).   Courts contemplating whether to stay a case must analyze the competing interests of litigants and find a delicate balance between them.   Kansas City Southern R. Co. v. United States, 282 U.S. 760, 763 (1931).   In order for the Court to grant the stay, the moving party must allege a clear case of hardship or inequity in being required to go forward, if there is even a remote chance that the stay will harm another party.   Landis, 299 U.S. at 255 (1936).

Plaintiff alleges that a stay will deprive it of its right to have their day in court and will cause further economic harm than what it has already endured, as it has paid all costs of labor, material, and insurance, among others, and is yet to be compensated by Defendants.   *See* Docket No. 22 at 21.   In support of its argument for a stay, Defendant cites an explicit provision in their Subcontract Agreement with Plaintiffs which states:

> "For any claim or dispute to which these Disputes provisions apply, [Plaintiff] agrees to forbear in filing, or to stay any claim or action that has been filed by [Plaintiff] pursuant to: (1) Article XVIII of the Agreement; and (2) any other right or remedy that Subcontractor may have, at law or in equity, including without limitation rights or remedies under the Miller Act (citation omitted) until dispute resolution and appeal processes set forth in these Dispute provisions are exhausted."

Docket No. 12, Exhibit B.   Defendant CCS allege that, under the provision quoted above, Plaintiff agreed to stay any proceedings until their matters are resolved pursuant to the dispute

resolution process provided by the Contracts Disputes Act of 1978 ("CDA"), 41 U.S.C. § 71919, *et seq*.  Based on the contract language, it is Defendant's position that, if their motion is denied, they will be unjustly forced to litigate simultaneously before the Court and before the Department of Veterans Affairs' Contracting Officer.  *See* Docket No. 12 at 9.

Pursuant to the contract language, the Court is inclined to side with the Defendants and grant the stay.  However, out of an abundance of caution, the Court will also analyze whether the Defendant has alleged a clear case of hardship or inequity if the stay is to be denied and the degree to which the stay would prejudice Plaintiff.  *See* Landis, 299 U.S. at 255 (1936).

Plaintiff's main argument for hardship relies on the holding of NavCom Defense Electronics, Inc. v. Ball Corp., a Ninth Circuit decision which they have interpreted as limiting all claims brought under the CDA to claims between contractors (not sub-contractors) and the government.  NavCom Defense Electronics, Inc. v. Ball Corp., 92 F.3d 877 (9th Cir. 1996). The NavCom decision, however, stresses that the claims of the subcontractor may be represented in the dispute resolution process by "having the prime contractor sponsor and certify the subcontractor's claim."  *See* Id.

Defendants claim they "sought information from many of its subcontractors about the costs and delays of the VA's actions,

to which many, including [Plaintiffs], submitted cost information that Carter then incorporated into its claim against the VA." Docket No. 29 at 6. Thus, the Court sees no reason for not granting a stay, as Plaintiff's strongest case for hardship is their delay in payment for the work performed and Defendant assures the Court they have incorporated Plaintiff's claims into their case against the VA. Accordingly, the Court hereby reluctantly **grants** Defendants motion to stay proceedings. However, Defendants are forewarned that this stay is not indefinite. Therefore, Defendants are ordered to file a progress report on the CDA proceedings every two months, starting in January 2015 and Plaintiff is to present its position within ten days of Defendants statements. Furthermore, both parties are hereby ordered to appear before the Court for a status conference hearing regarding the progress of CDA proceedings on February 15, 2015. If the Court is dissatisfied with the progress made in the dispute resolution process or is dissatisfied with how Defendant is representing Plaintiff's case before the contract officer the Court will continue these proceedings into the discovery phase.

## IV. CONCLUSION

For the aforementioned reasons, the Court hereby **DENIES** Defendant CCS' Motion to Dismiss, **GRANTS** Defendant CCS' Motion

to Stay Proceedings, and **DENIES** Defendant CCS' Motion to Strike Counts III, IV, and V(Docket No. 12).

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 12th day of December, 2014.

s/ Daniel R. Dominguez

DANIEL R. DOMINGUEZ

U.S. DISTRICT JUDGE